**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

| | | |
|---|---|---|
| **JAMES PARKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17-2262-STA-egb** |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

---

Before the Court is Defendant CSX Transportation, Inc.'s Motion to Dismiss (ECF No. 18) filed on July 14, 2017. Plaintiff James Parker has responded in opposition, and Defendant has filed a reply. For the reasons set forth below, the Motion is **GRANTED in part, DENIED in part**.

### BACKGROUND

Plaintiff filed an initial Complaint on April 17, 2017, alleging claims for injuries Plaintiff allegedly sustained as a result of being struck by a train operated by Defendant. Defendant filed a Rule 12(b)(6) motion to dismiss the initial Complaint on May 15, 2017. Plaintiff responded to the Rule 12(b)(6) motion by filing a First Amended Complaint (ECF No. 11) on May 31, 2017. As a result of Plaintiff amending his pleadings, the Court denied Defendant's motion to dismiss as moot. On June 5, 2017, Plaintiff filed a Second Amended Complaint (ECF No. 13). When Defendant filed a motion to strike the new pleading, the Court denied Defendant's motion to

strike the Second Amended Complaint and granted Plaintiff's motion for leave to file the pleading. Defendant's Motion to Dismiss the Second Amended Complaint followed.

For purposes of the Motion to Dismiss, the Court accepts the following well pleaded factual allegations as true. On June 2, 2011, at approximately 12:08 a.m., a train owned and operated by Defendant struck Plaintiff, as he was lying prostrate across railroad tracks near Dodson Street and 17th Avenue in Humboldt, Tennessee. Second Am. Compl. ¶¶ 10, 12, 15. Prior to approaching Plaintiff on the tracks, the train had gone through a railroad crossing, and its crew had sounded the horn. *Id.* ¶ 17. The crew clearly saw an obstruction on the tracks and mistakenly took the object for a log. *Id.* ¶¶ 18, 19. The crew did not immediately apply the brakes and admittedly took no steps to slow the train down until they realized the object on the tracks was a body, and not a log. *Id.* ¶¶ 18, 20. At that point the crewman sounded the horn and applied the brakes. *Id.* ¶ 20. The train was unable to stop before striking Plaintiff. *Id.* ¶ 21. Plaintiff's arm and leg were amputated during the accident. *Id.* ¶ 24. Plaintiff alleges that had the crew applied the brakes as soon as they saw the object on the tracks, the train would have stopped before striking Plaintiff. *Id.* ¶ 25. Instead, Plaintiff's body was found under the fifth car back from the train's engine. *Id.* ¶ 26. Based on these factual allegations, Plaintiff asserts that Defendant is liable for negligence and negligence *per se* (Count I) and negligent entrustment of a train (Count II), all under Tennessee law.

In its Motion to Dismiss, Defendant argues that each of Plaintiff's claims is subject to dismissal. First, Plaintiff's Second Amended Complaint fails to state a plausible claim for negligence or negligence *per se*. Defendant construes Plaintiff's pleadings to allege seven separate acts or omissions amounting to negligence: (1) failure to stop the train; (2) failure to sound the horn; (3) failure to slow the train; (4) failure to train the crew properly; (5) failure to

keep a proper lookout; (6) failure to remedy dangerous track conditions; and (7) failure to prevent pedestrian access to the tracks. With respect to the speed of the train and the proper training of the crew, Defendant argues that the Federal Railroad Safety Act ("FRSA") preempts any claim under Tennessee common law. According to Defendant, Plaintiff has no claim that the crew was operating the train at an unreasonable speed in violation of Tennessee law when the FRSA governs the lawful rate of speed for trains. Likewise, the FRSA sets out a comprehensive set of requirements for the training and supervision of railroad crews, preempting any Tennessee law covering the same subject matter. Therefore, Defendant argues the Court should dismiss these preempted claims.

And as for Plaintiff's other negligence theories, Defendant contends that the facts in the Second Amended Complaint show that Plaintiff was a trespasser on the tracks. Under the circumstances, Defendant's duty to Plaintiff under Tennessee law was to refrain from injuring him intentionally, willfully, or recklessly. The Second Amended Complaint alleges no facts to imply that the train crew acted intentionally or willfully. The crew applied the brakes and sounded the horn. Furthermore, Plaintiff was apparently lying on the tracks, even after the crew applied the brakes and sounded the horn. Plaintiff has pleaded no other facts to create an inference about the crew's state of mind, culpable or otherwise. As a result, the Court should hold that the Second Amended Complaint does not state a plausible negligence claim.

Concerning the allegation that the crew failed to sound the train's horn, Defendant argues that the Second Amended Complaint contradicts itself. Plaintiff alleges that the train had sounded the horn at a railroad crossing just before the train came upon Plaintiff. It makes no difference that the crew was sounding the horn because of the crossing, so long as the crew sounded the horn as the train approached Plaintiff. Moreover, the Second Amended Complaint

does not state a claim for the failure to maintain the area near the tracks. Plaintiff has lying on the tracks themselves, and Defendant did not owe Plaintiff as a trespasser the standard duty of care. There are no facts in the Complaint to suggest that the condition of the tracks in any way caused the accident. For all of these reasons, the Court should dismiss Plaintiff's negligence and negligence *per se* claims.

Next, Defendant argues that the Second Amended Complaint does not allege a plausible claim for negligent entrustment. The claim is in its essence a claim for failure to train, which the FRSA preempts. Also, Plaintiff has not alleged that the crewman entrusted with the operation of the train was incompetent to carry out his duties. In the event the Court does not dismiss all of Plaintiff's claims for relief, Defendant argues that the Second Amended Complaint does not allege any facts to support Plaintiff's prayer for punitive damages. Plaintiff has offered only a conclusory allegation of willfulness, wantonness, and recklessness. Plaintiff's claims sound in negligence and do not suggest anything more than an unreasonable failure to take a series of actions under the circumstances. Therefore, the Court should dismiss all of the claims in the Second Amended Complaint and/or Plaintiff's request for punitive damages.

Plaintiff has responded in opposition and argues that the Second Amended Complaint satisfies the notice pleading requirements of Federal Rule of Civil Procedure 8(a). Plaintiff contends that the FRSA does not preempt any of his claims. The FRSA contains a savings clause which allows a plaintiff to bring personal injury claims against a railroad under state law based on a railroad's failure to comply with state law, but only if the state law is additional to or more stringent than federal law on the same subject. Plaintiff states that his claims implicate railroad safety standards set forth in Tenn. Code Ann. § 65-12-108, specifically the Tennessee rule that a train operator must apply the brakes and sound the horn immediately upon seeing a person,

animal, or other obstruction on railroad tracks. The Tennessee statute is not inconsistent with the FRSA. Plaintiff further denies that he is alleging the train was traveling too fast. So federal regulations on safe operating speeds for trains are inapposite. Plaintiff also argues that his failure to train claim is not preempted because his theory is that Defendant failed to train its crew in accordance with applicable Tennessee safety requirements, not federal railroad safety rules. In short, federal law does not preempt Plaintiff's claims.

Plaintiff's argument in support of his negligent entrustment claim is not as clear. Plaintiff argues that the crewman admitted at the time of the accident that he did not immediately apply the brakes upon seeing an obstruction on the tracks. Plaintiff argues then that the crewman's failure to apply the brakes and sound the horn in violation of Tenn. Code Ann. § 65-12-108 suggests either that Defendant had not properly trained the crew, and the crew was unaware of the Tennessee requirement; or that the crew had willfully disregarded its training and/or Tennessee law. Plaintiff argues that the crew's failure to abide by Tennessee law on this occasion suggests a probability that the crew had failed to follow Tennessee law on other occasions, an implication that supports Plaintiff's negligent entrustment claim. Plaintiff also argues that the FRSA does not preempt Tennessee law because the FRSA governs appropriate standards for training on federal railroad regulations, and not training on state railroad regulations. Plaintiff concludes with a rebuttal of Defendant's argument for dismissal of Plaintiff's prayer for punitive damages.

Defendant has filed a reply. According to Defendant, Plaintiff's response makes two important concessions. Plaintiff denies he is asserting a claim for the train traveling too fast, and Plaintiff admits that the crew sounded the train's horn in the moments before the collision. Plaintiff cannot show that Tenn. Code Ann. § 65-12-108 requires a train to brake as soon as any

obstruction at all is seen on railroad tracks. For support Defendant cites a decision from the United States District Court for the Eastern District of Tennessee, in which that court construed Tenn. Code Ann. § 65-12-108 and held that the statute did not require trains to apply their brakes at the first hint of an object being on railroad tracks. Such a policy would put trains at risk of derailment any and every time something was found on the tracks. Defendant contends that even if this is what Tennessee law requires, the FRSA preempts it. The Tennessee law would unreasonably burden interstate commerce. And Defendant argues that the Court should reject Plaintiff's theory of preemption as to railroad training. Defendant reiterates its contention that even under a liberal reading of the Complaint, Plaintiff was a trespasser on the railroad tracks at the time of the accident.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed

factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The Court holds that the Second Amended Complaint fails to state a plausible claim for negligence or negligent entrustment but does state a claim for negligence *per se*. The Court takes up each of the issues presented in turn.

### I. Preemption of Tennessee Law

The threshold question presented is whether federal law preempts any of Plaintiff's claims for negligence and negligence *per se* and negligent entrustment. The "ultimate touchstone" in any preemption case is "the purpose of Congress." *Wimbush v. Wyeth*, 619 F.3d 632, 642 (6th Cir. 2010) (quoting *Demahy v. Actavis, Inc.*, 593 F.3d 428, 433–34 (5th Cir. 2010)). Preemption is more likely when Congress legislates "in an area where there has been a history of significant federal presence." *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 562 (6th Cir. 2002) (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)). But "[w]hen Congress legislates in a field that the States have traditionally occupied, courts start with the assumption that the historic police powers of the States were not to be superseded by the Federal

Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1194–95 (2009)). After all, the individual States exist as "independent sovereigns in our federal system." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Therefore, "the mere existence of a federal regulatory or enforcement scheme does not by itself imply preemption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990).

Preemption works in three ways: "First, a federal statute may expressly preempt the state law. Second, a federal law may impliedly preempt state law. Third, preemption results from an actual conflict between a federal and a state law." *Garcia v. Wyeth–Ayerst Labs.*, 385 F.3d 961, 965 (6th Cir. 2004). Defendant argues that this case presents an example of conflict preemption. Conflict preemption occurs when a provision of federal law "actually conflicts with state law." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 619 (6th Cir. 2008). An actual conflict arises when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 721 (1985).

The Supreme Court has held that the FRSA preempts state law "only if the federal regulations substantially subsume the subject matter of the relevant state law." *Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 352 (2000) (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993)). Put another way, "[a] state-law negligence action is 'covered' and therefore preempted if a FRSA regulation 'substantially subsumes' the subject matter of the suit." *Nickels v. Grand Trunk Western R.R., Inc.*, 560 F.3d 426, 429 (6th Cir. 2009) (citing *Easterwood*, 507 U.S. at 664). Defendant argues that the FRSA preempts three claims in the Second Amended Complaint: the excessive speed of the train, the negligent training of the crew, and the negligent entrustment of the train to this specific crew. Plaintiff concedes that he is not alleging any claim

about the crew operating the train at an excessive speed.  This leaves Defendant's arguments that Plaintiff's failure to train and negligent entrustment claims are preempted.

## A. Failure to Train

First, the Court holds that the FRSA and its regulations preempt Plaintiff's failure to train theory of negligence.  The gravamen of Plaintiff's negligent training claim is that Defendant failed to train its crew on the safety requirements of Tennessee law, specifically Tenn. Code Ann. § 65-12-108.  According to Plaintiff, "[t]he [preemption] question to be answered . . . is whether the Secretary of Transportation has prescribed some rule or regulation that covers the duties set forth in the T.C.A. § 65-12-108."  Plaintiff's framing of the question, however, misses the mark.  Tenn. Code Ann. § 65-12-108(c) does not address training requirements for railroad personnel.  The statute concerns accident prevention and how a railroad crew must respond to "obstructions" on the railway: "when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."  Tenn. Code Ann. § 65-12-108(c). Plaintiff's claim is that Defendant failed to train its crew to operate the train safely, and specifically on how to prevent an accident in accordance with Tenn. Code Ann. § 65-12-108(c). The preemption issue is not whether federal law addresses how and when a train approaching an object on the tracks must apply the brakes and sound the horn.  The real question is whether federal law on railroad training "substantially subsume[s] *the subject matter* of the relevant state law."  *Shanklin*, 529 U.S. at 352 (emphasis added).

The Court concludes that the federal regulations on railroad training "substantially subsume" Tennessee law on a railroad's duty to train its personnel.   The "relevant state law" in this case is the Tennessee common law of negligence, and not Tenn. Code Ann. § 65-12-108.

And the "subject matter" of Tennessee common law is a railroad's common law duty to train railroad personnel on the safe operation of trains and railroad equipment. The United States Secretary of Transportation has promulgated regulations addressed to training for railroad personnel. The relevant regulation is found at 49 C.F.R. § 240.123 and provides training criteria for certified locomotive engineers and non-certified locomotive engineers. For certified personnel, the railroad most offer "continuing education" on the following topics: "personal safety, operating rules and practices, mechanical condition of equipment, methods of safe train handling (including familiarity with physical characteristics as determined by a qualified Designated Supervisor of Locomotive Engineers), and relevant Federal safety rules." 49 C.F.R. § 240.123(b). For "previously untrained" personnel receiving their "initial training," the railroad may create a training program to cover "at a minimum" the following subjects: (1) personal safety, (2) railroad operating rules, (3) mechanical condition of equipment, (4) train handling procedures (including the use of locomotive and train brake systems), (5) familiarization with physical characteristics including train handling, and (6) compliance with federal regulations. 49 C.F.R. § 240.123(c)(4). The regulations further require railroads to submit their training program to the Federal Railroad Administration for approval. 49 C.F.R. § 240.103(b) & (c). In light of the foregoing, the federal regulations governing railroad training "substantially subsume" the Tennessee common law on railroad training.

The Court further holds that the FRSA's savings clause has no application to Plaintiff's negligent training claim. The FRSA has preemptive effect unless state law is "additional to" or "more stringent" than federal law, 49 C.F.R. § 240.5, and where the state law "is necessary to address an essentially local safety hazard, is not incompatible with the federal regulation, and does not unreasonably burden interstate commerce." *Nickels*, 560 F.3d at 432 (citing 49 U.S.C.

§ 20106(a)(2)). Plaintiff mentions the local safety hazard element in his brief but fails to show how Tennessee common law addresses a local safety hazard. Federal courts have defined "local safety hazards" as "local situations which are not statewide in character and not capable of being adequately encompassed within national uniform standards." *Duluth, Winnipeg & Pacific Ry. Co. v. City of Orr*, 529 F.3d 794, 798 (8th Cir. 2008) (collecting cases); *see also Norfolk & W. Ry. v. Publ. Utils. Comm'n*, 926 F.2d 567, 571 (6th Cir. 1991). In this case Plaintiff's negligent training claim is a matter of Tennessee common law, and the Court has no reason to conclude that Tennessee common law addresses any local condition peculiar to the site of the accident in Humboldt, Tennessee, or in West Tennessee generally. The Court therefore rejects Plaintiff's argument on this point. For these reasons, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's negligent training claim.

## B. Negligent Entrustment

For similar reasons, the FRSA also preempts Plaintiff's negligent entrustment claim. Under Tennessee law, negligent entrustment "requires proof that a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another." *Ali v. Fisher*, 145 S.W.3d 557, 561-62 (Tenn. 2004) (citing Restatement (Second) of Torts § 390 (1964)). Plaintiff describes his negligent entrustment theory as an alternative claim for relief. In fact, the negligent entrustment claim is completely derivative of Plaintiff's negligent training theory. The Second Amended Complaint alleges that Defendant knew the crew of the train in question was not properly trained to comply with Tenn. Code Ann. § 65-12-108(c) or knew that the crew was likely to disregard its training. In other words, an essential element of Plaintiff's negligent entrustment claim is Defendant's allegedly negligent training program. The Court holds that the FRSA preempts the negligent

entrustment claim for the same reasons that the negligent training claim is preempted. Therefore, Defendant's Motion to Dismiss is **GRANTED** as to the negligent entrustment claim.

Having concluded that the Second Amended Complaint's claims for negligent training and negligent entrustment are preempted, the Court now considers the merits of Plaintiff's claims for negligence and negligence *per se*.

## II. Negligence under Tennessee Common Law

Plaintiff next alleges that Defendant's crew acted negligently in a number of respects, all resulting in permanent injuries to Plaintiff. Under Tennessee law a plaintiff must prove the following elements in order to state a claim of negligence: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (citation omitted). Notably the Second Amended Complaint does not allege what duty Defendant owed Plaintiff. But the pleadings do allege that Plaintiff was injured while lying on the railroad tracks at some time after midnight. It is plain from the allegations of the Second Amended Complaint that Plaintiff was a trespasser on the railroad. A landowner's duty to a trespasser is to refrain from intentionally, willfully, or recklessly injuring him. *Lewis v. Norfolk S. Ry. Co.*, 618 F. Supp. 2d 833, 838 (W.D. Tenn. 2008) (citing *Yarbrough v. Potter*, 207 S.W.2d 588, 589 (Tenn. 1948)); *see also Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984) (abrogating common law classifications of "invitee" and "licensee"); *White v. Ala. Great S. Ry. Co.*, 1994 WL 587708, at *4 (Tenn. Ct. App. 1994).

Plaintiff alleges in conclusory fashion that Defendant's crew was "reckless," "willful," and "grossly negligent." Second Am. Compl. ¶ 35. This single allegation, without more, does not state a plausible claim for Defendant's culpable state of mind. *Mills v. Barnard*, 869 F.3d

473, 481–82 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 686). The Second Amended Complaint contains no facts to show that Defendant's crew acted intentionally or willfully. As such, Plaintiff must point to some allegation that the crew acted recklessly. A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise . . . ." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (citing Tenn. Code Ann. § 39–11–302 (2008) (criminal definition of "reckless")); Restatement (Second) of Torts § 500 cmt. a (2008) ("For ... reckless conduct, the actor must know, or have reason to know, the facts which create the risk.").[1]

The pleadings contain no other well-pleaded facts to substantiate the bare allegation that the crew acted recklessly. "The requirement of recklessness imposes . . . a significantly heavier burden than a simple negligence claim." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 207–08 (Tenn. Ct. App. 2008) (citing *Doe 1 v. Roman Catholic Diocese*, 154 S.W.3d 22, 39 (Tenn. 2005)). But the claim that the crew should have acted sooner to apply the brakes and thereby avoid the accident "is consistent with both negligence and recklessness." *Clark v. Miller*, No. 16:CV-69, 2016 WL 4703828, at *5 (E.D. Tenn. Sept. 8, 2016) (citing *Deom v. Walgreen Co.*, 591 F. App'x 313, 320 (6th Cir. 2014)). In other words, the Second Amended

---

[1] Tennessee recognizes the "well-worn path" exception to the general rule on trespassers. *Harrison v. S. Ry. Co.*, 215 S.W.2d 31 (Tenn. Ct. App. 1948). The exception provides that a railroad owes a limited duty to a trespasser when the railroad is aware that the public crosses the tracks at a particular location. *Id.* In order for a railroad to be liable under the well-worn path exception, the railroad must (1) have acquiesced for a long period of time in public use of the premises; (2) it must have made the property defective without giving warning of its changed condition; and (3) the plaintiff's injuries must have occurred due to the defective condition. *Id.* at 34. The Second Amended Complaint alleges that Defendant knew pedestrians crossed the tracks at the location where Plaintiff was struck by the train. However, Plaintiff does not allege that Defendant did anything or failed to do anything to create a defective condition on the property. There are no facts in the pleadings from which it can be inferred that the well-worn path exception will apply.

Complaint describes "conduct that is actionable and conduct that is not," which does not "nudge [the] claim" for negligence "across the line from conceivable to plausible." *Deom*, 591 F. App'x at 320 (quoting *Twombly*, 550 U.S. at 570).

The Second Amended Complaint can also be read to allege that Defendant failed to fence the railroad bed and prevent pedestrians from entering the area on and around the tracks. Defendant correctly argues in its opening brief that Tennessee recognizes no duty on the part of a railroad to erect fencing around railroad tracks to protect pedestrians who may come onto the tracks. *See Sinard v. Railroad*, 48 S.W. 227, 228 (Tenn. 1898). Plaintiff has not responded to Defendant's argument in his brief or shown why the Court should not apply Tennessee's common law rule on fencing. Under the circumstances, the Court holds that Plaintiff has waived the issue, and Defendant is entitled to the dismissal of the negligent fencing claim. *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that a party's failure to respond or oppose a motion to dismiss may result in waiver of the issues raised in the motion to dismiss). Therefore, Plaintiff has failed to state a claim for common law negligence, and Defendant's Motion to Dismiss the claim is **GRANTED**.

### III. Negligence *Per Se* Under Tenn. Code Ann. § 65–12–108

This leaves Plaintiff's claim that Defendant violated Tenn. Code Ann. § 65–12–108 and is therefore liable for its negligence *per se*. As previously noted, paragraph (c) of Tenn. Code Ann. § 65–12–108, also known as the Tennessee Lookout statute, reads as follows: "when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident." Tenn. Code Ann. § 65-12-108(c). The Tennessee Supreme Court has observed that

"the object of the statute is primarily to protect human life" and that in view of this purpose, the statute imposes "absolute liability." *Howard & Herrin v. Nashville, C. & St. L. Ry. Co.*, 284 S.W. 894, 895 (Tenn. 1926). Not surprisingly, Tenn. Code. Ann. § 65–12–109 makes a railroad's violation of any part of § 65–12–108 negligence *per se*. Tenn. Code. Ann.. § 65–12–109.

In this case Plaintiff alleges that the crew of the train violated Tenn. Code Ann. § 65-12-108(c) by failing (1) "to immediately stop the train;" (2) "to sound the horn for the obstruction on the tracks until realizing it was a body that turned out to be Plaintiff, who was admittedly visible on the railroad tracks;" (3) "to immediately apply the brakes;" and (4) "to immediately employ all means to stop the train and prevent the collision it knew was imminent." Second Am. Compl. ¶ 31; *see also id.* ¶ 34(a)-(f). Once an engineer knows or reasonably should know a person, animal, or obstruction is present on the railway, Tenn. Code Ann. § 65-12-108(c) "positively requires three things—the alarm whistle, the application of the brakes, and, if possible, the stopping of the train." *Southern R. Co. v. Matthews*, 29 F.2d 52, 56 (6th Cir. 1928) (emphasis added) (construing the same language found in a previous version of the statute). The Second Amended Complaint can be read to allege a claim that Defendant's crew should have regarded Plaintiff as an "obstruction" as he was lying on the tracks and immediately followed the requirements of Tenn. Code Ann. § 65-12-108(c). The Court holds that Plaintiff has plausibly alleged such a claim for negligence *per se*.

The Second Amended Complaint's main negligence *per se* theory is that Tenn. Code Ann. § 65-12-108(c) required the crew to sound the horn, apply the brakes, and attempt to stop the train as soon as the crew saw an "obstruction" on the tracks. Plaintiff alleges that the crew should have immediately applied the brakes upon seeing an "obstruction" on the tracks and that

had they done so, the train would have stopped before colliding with Plaintiff. The statutory requirements to avoid an accident apply "when any person, animal, or other obstruction appears upon the road." Tenn. Code Ann. § 65-12-108(c). The Tennessee Supreme Court has construed "obstruction" to mean "that which may hinder the free and safe passage of the train, or that which may receive an injury or damage, such as would be unlawful to inflict, if run over or against by the train, as in case of stock, or a man approaching on the track." *Howard & Herrin*, 284 S.W. at 896 (citation omitted). But whether an object meets the statutory definition of an "obstruction" is arguably a mixed question of fact and law for the court to decide and depends on the specific circumstances of the case. For example, the Tennessee Supreme Court has held that not every "animal" falls within the protective sweep of the statute and that a train crew has no statutory duty to prevent a collision with a dog on the tracks. *Id.*

Other Sixth Circuit authority applying Tennessee law suggests a railroad's liability for not avoiding an "obstruction" may depend on other questions of fact as well. The Sixth Circuit has held that whether a train engineer "regards" an object such as an automobile as an "obstruction" and whether the object "was seen or should have been seen in time to enable the crew to regard it as an obstruction and to comply with the statute" are questions of fact. *Louisville & N. R. Co. v. Rochelle*, 252 F.2d 730, 737 (6th Cir. 1958) (applying an earlier version of Tenn. Code Ann. § 65-12-108(c)); *see also Rush v. Ill. Cent. R. Co.*, 399 F.3d 705, 726 (6th Cir. 2005) (applying Tenn. Code Ann. § 65-12-108(c) and holding that whether an engineer was negligent *per se* required the resolution of "a myriad of factual disputes"). The Sixth Circuit has held in another decision that whether a crew complied with Tenn. Code Ann. § 65-12-108(c) and "did all they could have done to avoid the injury" "is ordinarily a question of fact for the jury in

the light of all the evidence." *S. Ry. Co. v. Elliott*, 250 F.2d 740, 742 (6th Cir. 1958) (citing *Louisville & N. R. Co. v. Tucker*, 211 F.2d 325, 331 (6th Cir. 1954)).

Based on this authority, the Court holds that the Second Amended Complaint states a plausible negligence *per se* claim for the crew's failure to regard Plaintiff as an "obstruction" on the railway and comply with its duties under Tenn. Code Ann. § 65-12-108(c). Plaintiff alleges that the crew of the train "clearly saw an obstruction in or upon the railroad tracks and did not immediately brake to stop the train and avoid the collision." Second Am. Compl. ¶ 18. One of the crew later admitted as much and stated to local police in the aftermath of the accident that at first he believed the object on the railway was a log and did not realize that the object was a person until moments later. *Id.* ¶ 20. Plaintiff alleges that the train traveled an unreasonable distance before the crew realized a person was on the tracks and attempted to stop and that if the crew had applied the brakes on first seeing an "obstruction," the train would not have collided with Plaintiff. *Id.* ¶¶ 22, 25. The Second Amended Complaint pleads little more to show that the crew should have regarded Plaintiff as an "obstruction" under all of the circumstances. However, at the pleadings stage, these allegations suffice to state a plausible claim that Defendant was negligent *per se* and therefore liable to Plaintiff.

Defendant argues that the Court should reject Plaintiff's "obstruction" theory of negligence *per se* and follow the reasoning of the United States District for the Eastern District of Tennessee in *Goins v. CSX Transp., Inc.* The Eastern District of Tennessee held in *Goins* that the railroad was entitled to judgment as a matter of law on the plaintiff's negligence *per se* claim in light of undisputed proof that the crew of the train had complied with Tenn. Code Ann. § 65-12-108(c). *Goins*, No. 1:08-cv-135, 2009 WL 803103, at *3 (E.D. Tenn. Mar. 25, 2009). The *Goins* plaintiff was walking on railroad tracks near a train maintenance facility around three

o'clock in the afternoon. *Id.* at *1. Upon seeing the plaintiff walking on the tracks, the train crew initially sounded the horn, mistaking the plaintiff for a railroad employee. *Id.* As soon as the crew realized the plaintiff was not getting off the tracks, they applied the brakes but too late to avoid hitting the plaintiff. *Id.* The Eastern District of Tennessee held that under these facts the crew had complied with Tenn. Code Ann. § 65-12-108(c), deciding that "the statute does not require applying the emergency breaks at the slightest hint of a potential problem" and thereby "put[ting] the train at risk of derailment every time the crew sees something on the track ahead." *Id.* at *4.

The Court tends to agree that the Tennessee Lookout statute does not require an engineer to take action that would put the train in jeopardy of derailment. The Court's ruling today is not that any object found on railroad tracks constitutes an "obstruction" for purposes of Tenn. Code Ann. § 65-12-108(c), only that the perceptions of the train crew and the reasonableness of their reaction to what they perceive are relevant to the claim that they did not comply with their statutory duties to brake at the sight of an "obstruction" and prevent an accident. In this respect, the Court finds *Goins* distinguishable. As a procedural matter, the Eastern District of Tennessee decided *Goins* on a Rule 56 motion for summary judgment, after the parties had conducted discovery and had an opportunity to develop a full evidentiary record. By contrast, the Court's inquiry here is limited to the well-pleaded factual allegations of the Second Amended Complaint. Defendant's Motion to Dismiss simply tests the sufficiency of the pleadings under Rule 12(b)(6). Factually, the two cases appear to be quite different. Unlike the plaintiff in *Goins*, Plaintiff alleges that he was lying down on the tracks, not walking, and in the dark of night, not in daytime hours. Perhaps more importantly, Plaintiff asserts that the crew should have regarded Plaintiff as an "obstruction" and proceeded in accordance with Tenn. Code Ann. § 65-12-108(c)

as soon as they perceived an "obstruction" in the railway. There is no indication from the court's opinion in *Goins* that the train crew ever regarded the plaintiff as anything other than a "person" for purposes of Tenn. Code Ann. § 65-12-108(c). But in the case at bar, Plaintiff alleges that the crew should have regarded him as an "obstruction." For all of these reasons, the Court finds *Goins* instructive but not entirely applicable in this case.

Defendant finally argues that even if Tenn. Code Ann. § 65-12-108(c) requires a train crew to apply the brakes and make every effort to stop a train at the first hint of an "obstruction" on the tracks, the Court should hold that federal law preempts such a requirement. According to Defendant, such a reading of the statute would increase the dangers of train derailments and unduly burden interstate commerce. The Court finds it unnecessary to reach Defendant's argument on this point, whatever its merits may be. The Court's holding is not that any object on the tracks constitutes an "obstruction" as Tenn. Code Ann. § 65-12-108(c) uses that term and should immediately require a train crew to apply the brakes, as Plaintiff argues. The "obstruction" question is more fact-bound under Tennessee law than Plaintiff's position would suggest. More to the point, Defendant has raised this specific preemption argument for the first time in its reply brief. Courts generally decline to consider arguments which are raised for the first time in a reply because they deprive the other party of an opportunity to respond. The Court therefore declines to consider the preemptive effect of federal law on Plaintiff's reading of Tenn. Code Ann. § 65-12-108(c).

The Second Amended Complaint can be read to assert two other distinct theories of negligence *per se*, neither of which are plausible claims for relief. First, the Second Amended Complaint does not allege a violation of the statutory duty to sound the train's horn. According to Plaintiff, the train had just come through a railroad crossing and had sounded the horn. The

pleadings allege that "the crewmen failed to sound an audible warning when they first observed the obstruction they saw on the track as required by T.C.A. §65-12-108, but rather had been sounding the horn for the crossing they were passing through." Second Am. Compl. ¶ 34(d). Plaintiff concedes in the pleadings that the crew was sounding the horn as they approached him on the tracks. It matters not that the crew was sounding the horn because the train was clearing a railroad crossing. Likewise, it is clear from the pleadings that the crew immediately sounded the horn again, once they realized moments later that a person was on the tracks. Based on these allegations, Plaintiff has not pleaded a violation of Tenn. Code Ann. § 65-12-108(c)'s requirement that the crew sound the horn upon seeing a "person" or "obstruction" on the railroad.

Second, the Second Amended Complaint can be read to assert that the crew not only failed to regard Plaintiff as an "obstruction" but also that the crew failed to regard Plaintiff as a "person." To the extent that Plaintiff alleges a statutory violation based the train crew's failure to avoid a "person" on the tracks, the Second Amended Complaint fails to state a claim. Plaintiff alleges that the crew at first saw Plaintiff and perceived him to be some kind of object, perhaps a log, on the tracks. Once the crew realized that a person was on the tracks, the crew applied the brakes, sounded the horn, and attempted to stop the train. This is all that Tenn. Code Ann. § 65-12-108(c) required under the circumstances. The statute does not absolutely require that a train come to a stop when a "person" is on the tracks, only that an engineer bring a train to a stop "if possible." The Second Amended Complaint alleges no facts to show that the crew should have taken any other action under the circumstances to stop the train, once they realized a human being was on the tracks. Therefore, Plaintiff has failed to state a negligence *per se* claim based on the crew's actions or failures to act after they realized a "person" was on the tracks.

For all of these reasons, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part** as to Plaintiff's negligence *per se* claim.

## IV. Prayer for Punitive Damages

Finally, Defendant seeks dismissal of Plaintiff's claim for punitive damages. "Under Tennessee law, punitive damages are proper only if a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 411 (6th Cir. 2016) (quoting *Hodges*, 833 S.W.2d at 901). The Court has already concluded that the Second Amended Complaint fails to allege with plausibility that Defendant acted intentionally or recklessly. The Court also finds no allegations to support the inference that Defendant acted maliciously or fraudulently. In the absence of such allegations, Plaintiff has failed to allege any claim where punitive damages would be proper under Tennessee law. Therefore, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's prayer for punitive damages.

<u>CONCLUSION</u>

The Court holds that the Second Amended Complaint fails to state a claim for common law negligence, negligent training, negligent entrustment, or punitive damages. Plaintiff has alleged a plausible claim for negligence *per s*e based on the crew's alleged failure to take action to avoid an "obstruction" on the railway. Therefore, Defendant's Motion to Dismiss is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: November 17, 2017.